UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

LARRY MICHAEL BUXTON,

    Plaintiff,

v.                                                      Case No. 5:14-cv-184-Oc-MCR

CAROLYN W. COLVIN, Commissioner of
the Social Security Administration,

    Defendant.
_____/

**MEMORANDUM OPINION AND ORDER**[1]

**THIS CAUSE** is before the Court on Plaintiff's appeal of an administrative decision denying his application for a Period of Disability and Disability Insurance Benefits ("DIB"). Plaintiff alleges he became disabled on May 4, 2009. (Tr. 124.) A hearing was held before the assigned Administrative Law Judge ("ALJ") on September 19, 2012, at which Plaintiff was represented by an attorney. (Tr. 26-68.) The ALJ found Plaintiff not disabled from May 4, 2009 through November 9, 2012, the date of the decision. (Tr. 14-21.)

In reaching the decision, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine, arthralgia, a history of cancer of the prostate, status-post radiation treatment, and valgus deformity of the knees with crepitation. (Tr. 16.) The ALJ also found that Plaintiff

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. (Doc. 15.)

had the residual functional capacity ("RFC") to perform less than a full range of medium work. (Tr. 17.)

Plaintiff is appealing the Commissioner's decision that he was not disabled from May 4, 2009 through November 9, 2012. Plaintiff has exhausted his available administrative remedies and the case is properly before the Court. The undersigned has reviewed the record, the briefs, and the applicable law. For the reasons stated herein, the Commissioner's decision is **REVERSED and REMANDED.**

### I.   Standard of Review

The scope of this Court's review is limited to determining whether the Commissioner applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the Commissioner's findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th

Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating the court must scrutinize the entire record to determine the reasonableness of the Commissioner's factual findings).

## II.   Discussion

Plaintiff argues the ALJ erred in giving "limited probative weight" to Dr. Gogan's treating opinions, while giving "great probative weight" to Dr. Krishnamurthy's non-examining opinions, in assessing Plaintiff's RFC. Plaintiff also argues the ALJ improperly discounted his testimony regarding his subjective complaints. Defendant responds the ALJ properly evaluated the medical opinions of record and Plaintiff's subjective complaints, and her RFC is supported by substantial evidence.

### A.   Standard for Evaluating Opinion Evidence

The ALJ is required to consider all the evidence in the record when making a disability determination. *See* 20 C.F.R. § 404.1520(a)(3). With regard to medical opinion evidence, "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). Substantial weight must be given to a treating physician's opinion unless there is good cause to do otherwise. *See Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).

3

"'[G]ood cause' exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004). When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on: (1) the length of the treatment relationship and the frequency of examination, (2) the nature and extent of the treatment relationship, (3) the medical evidence supporting the opinion, (4) consistency of the medical opinion with the record as a whole, (5) specialization in the medical issues at issue, and (6) any other factors that tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c)(2)-(6).

Although a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion, *see Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984) (per curiam); 20 C.F.R. § 404.1527(c)(2), "[t]he opinions of state agency physicians" can outweigh the contrary opinion of a treating physician if "that opinion has been properly discounted," *Cooper v. Astrue*, 2008 WL 649244, *3 (M.D. Fla. Mar. 10, 2008). Further, "the ALJ may reject any medical opinion if the evidence supports a contrary finding." *Wainwright v. Comm'r of Soc. Sec. Admin.*, 2007 WL 708971, *2 (11th Cir. Mar. 9, 2007) (per curium). *See also Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985) (per curiam) (same).

B.  Relevant Evidence of Record

1.  William J. Gogan, M.D.[2]

Dr. Gogan has treated Plaintiff since March of 2009.[3] His recurrent diagnoses included: L4-L5 disc bulge; herniated nucleus pulposus, L5-S1; bulging disc, L3-L4; facet arthrosis, L1-L2, L5-S1; cervical strain; herniated nucleus pulposus, C5-C6, C6-C7; and cervical spondylosis, C3-C4, C4-C5, C6-C7. (*See, e.g.*, Tr. 301.) On March 9, 2009, Dr. Gogan noted that Plaintiff was "certainly in a significant amount of pain" after just having had physical therapy. (Tr. 309.) Dr. Gogan further noted: "I think all attempts were made to do therapy but I think that patient needs a tailored program and maybe the patient does not need therapy as often as three times a week." (*Id.*) Dr. Gogan's March 23, 2009 follow-up note indicates that Plaintiff "also has been having massage therapy and that is actually at times making him worse." (Tr. 308.) Thus, he recommended that Plaintiff continue with his pain medication, but avoid deep-seated massage therapy and do less physical work to ease some of his pain, which appeared

---

[2] Dr. Gogan is an orthopedic surgeon. (*See* Tr. 30, 38, 311.)

[3] Specifically, the record indicates that Plaintiff saw Dr. Gogan on March 9, 2009, March 23, 2009, April 20, 2009, April 27, 2009, May 18, 2009, June 15, 2009, June 22, 2009, July 6, 2009, August 17, 2009, August 24, 2009, August 31, 2009, September 21, 2009, September 28, 2009, June 21, 2010, July 19, 2010, August 2, 2010, August 30, 2010, September 20, 2010, October 11, 2010, October 25, 2010, November 1, 2010, November 15, 2010, December 13, 2010, January 3, 2011, January 31, 2011, and February 16, 2011, or a total of twenty-six times. In addition, on August 22, 2012, Dr. Gogan completed a medical source statement regarding Plaintiff's ability to do work-related activities.

doable given that Plaintiff had been laid off.  (*Id.*)

On April 20, 2009, Dr. Gogan stated that Plaintiff's medicine (Vicodin HP) "helps at times but there are times when he still has a lot more pain."  (Tr. 307.)  He also stated that "perhaps it is a little easier for [Plaintiff's] injuries" given that Plaintiff has not been working.  (*Id.*)  Dr. Gogan switched Plaintiff's medication to Percocet 10/325.  (*Id.*)  On April 27, 2009, Plaintiff was switched back to Vicodin HP because Percocet made him nauseous.  (Tr. 306.)

On May 18, 2009, Dr. Gogan stated:

> Because [Plaintiff] is not working, the good news is that his musculoskeletal problems are still there but not as severe. . . . Taking the hydrocodone, he is doing relatively well.  His worst problem is the low back and we know that this patient has disc pathology at two levels, as well as facet osteoarthritis on all five levels of the lumbar spine.

(Tr. 305.)

On June 15, 2009, Dr. Gogan wrote that "[w]ithout his pain medication, there is just no way [Plaintiff] could cope after his first accident" and that "[o]bviously, the man is in pain."  (Tr. 304.)  He also wrote that he did not have Plaintiff's MRI results since Plaintiff's most recent accident.  (*Id.*)

On June 22, 2009, Dr. Gogan wrote:

> The patient is now on Roxicodone.  This is helping him cope with his day in, day out pain.  The patient is currently not working.  Less physical activity is helping. . . . The patient has to take the pain medication more or less round the clock.  There are just things this patient is not capable of doing.  Unfortunately, his job always involves doing hard work.  He is not capable of doing a lot of

>bending, stooping, lifting, carrying, etc. and I think this patient may be a candidate for disability.

(Tr. 303.)

On August 17, 2009, Dr. Gogan noted Plaintiff was "having a poor pain response with" the Roxicodone. (Tr. 301.) However, on August 24, 2009, Dr. Gogan noted that Plaintiff was on Roxicodone and doing well. (Tr. 300.) On August 31, 2009, Plaintiff had some difficulty getting out of a chair and some tenderness across the back aggravated by bending forward. (Tr. 299.) On September 21, 2009, Dr. Gogan noted Plaintiff had been having severe low back pain and despite taking his medication, he had difficulty getting out of a chair or out of bed. (Tr. 297.) Upon physical examination, Plaintiff was in moderate distress, walked with a kyphosis, had tenderness across the small of his back, and used a Gowers maneuver to stand up. (*Id.*) Among Dr. Gogan's diagnoses was acute and chronic lumbar strain. (*Id.*) Dr. Gogan refilled his pain medication and added Xanax as a muscle relaxer. (*Id.*)

On September 28, 2009, Dr. Gogan stated:

>This patient has significant disc pathology in his lumbar spine. He is also getting right leg pain. He is having a lot of difficulty and he basically is very fatigued trying to cope with the pain day in, day out. . . . I think most surgeries would reduce the patient's pain, certainly change his pain, but at best result would be a reduction of 50%. I still think the patient would be on pain medication. I think the patient would be disabled. I do not think the patient will be able to enter the workforce with a scar on your back.

(Tr. 296.) Plaintiff was continued on the Roxicodone. (*Id.*)

On June 21, 2010, in addition to his recurrent diagnoses, Dr. Gogan diagnosed acute left-sided sciatica. (Tr. 337.) The follow-up note provides in part:

> He is stable on his pain medication. The patient is complaining of pain in his left knee. He is getting an MRI of his left knee to make sure there is nothing wrong with that. I think he is getting referred pain. He probably has some mild arthritis, but with left-sided sciatica, prolonged sitting, he gets very sick.

(*Id.*)

On August 2, 2010, Plaintiff was switched to Vicodin, a less expensive option than Roxicodone. (Tr. 335.) On August 30, 2010, Plaintiff reported that Vicodin was not helping and he was given Roxicodone. (Tr. 333.) Dr. Gogan noted that the OxyContin sampling program would be an option too, once Plaintiff completes the paperwork. (*Id.*) Dr. Gogan stated:

> I think long-term, this man has crippling low back pain, he is looking at major fusion surgery but probably will not in the end cure him. I think it would change his pain. I do not think it would change his pain significantly for the better for very[,] very long period of time. I think the results of surgery are probably pretty poor. Certainly it would not allow him to get back into the workforce. In fact, it may be a hindrance because of the history of spinal surgery. Therefore, our plan is Roxicodone, Vicodin. His Vicodin has not worked, and then try sampling program for the long-acting pain medication. Finally, the patient is having a lot of left leg pain. . . . We have to go find out when his last MRI study was. We need to put that certainly, the most recent MRI, in this chart. I will see about getting a new MRI.

(Tr. 333-34.)

On October 11, 2010, Dr. Gogan noted: "Patient is probably going to start

8

applying for disability.  As a patient he realizes that is it [sic] going to be very difficult for him if he would return to the work force. . . . He is coping." (Tr. 331.) On November 1, 2010, Dr. Gogan stated: "By taking his pain medication, he is responding well as can be expected." (Tr. 329.)  On November 15, 2010, Dr. Gogan stated:

> Patient is on the OxyContin medication. . . . This medication works adequately to treat his pain.  I am pleased that he is doing well.  Patient has low back and neck pain.  Patient remains out of the work force.  Patient has daily movement. . . . Patient never sits comfortably in a chair.  He has some difficulty.  He has some tenderness over the left side to the low back.

(Tr. 328.)

On January 3, 2011, Dr. Gogan stated: "Patient is doing well.  The OxyContin he gets is free.  That has really helped him with respect to not only the cause but also obviously his pain management. . . . Patient has stable back aches, pain scores . . . . I am pleased that he has done well." (Tr. 326.) Following this visit, Plaintiff saw Dr. Gogan on January 31, 2011 and February 16, 2011 for new elbow pain and for a follow-up on his earlier complaints.  (Tr. 324-25.)

On August 22, 2012, Dr. Gogan completed a medical source statement regarding Plaintiff's ability to do work-related activities.  (Tr. 381-82.)  He opined that Plaintiff could lift and carry less than 10 pounds both occasionally and frequently; could stand and walk for less than two hours and sit for less than two

9

hours in an eight-hour work-day; could sit or stand for 5 minutes at a time; would need to walk around every 5 minutes for 5 minutes each time; and would need the opportunity to shift positions at will and to lie down at unpredictable intervals, generally every two hours. (Tr. 381.) Dr. Gogan further opined that Plaintiff should never twist, stoop (bend), crouch, climb stairs/ladders; should avoid all exposure to extreme cold/heat and other environmental conditions; would be limited in reaching, fingering, pushing/pulling, handling, and feeling; and would be absent from work for more than four days per month. (Tr. 382.) Dr. Gogan stated that his findings were supported by "history physical[,] many years of follow up [and] multiple MRI studies." (Tr. 381; see also Tr. 382.)

### 2. Dr. Lare Ziemba

On April 12, 2010, Dr. Ziemba saw Plaintiff for an initial chiropractic consultation and treatment. (Tr. 311.) The report indicates that Plaintiff previously received epidural injections, chiropractic care, and massage therapy. (Id.) Plaintiff's examination revealed in relevant part:

> Shoulder Depression Test was positive on the left and negative on the right. . . .
> Patrick's Test was positive bilaterally.
> Straight Leg-Raising Test (SLR) was positive bilaterally. Additional note: Indication: This test indicates lumbosacral involvement.
> Kemp's Test was positive bilaterally. Indication: This test suggests facet or pericapsular inflammation when patient is test [sic] in a standing position and the test elicits nonradiating pain at the L5-S1 area.
> Knee pain with flexion of the knee, extension is full.
> . . .

10

> The overall global range of motion was assessed for the cervico-thoracic region with the findings demonstrating movement with mild to moderate joint fixation. Range of motion was assessed for the lumbar spine with the following results:
> extension moderate to severely decreased, left rotation mild to moderately decreased, left lateral flexion moderately decreased, flexion moderate to severely decreased, right lateral flexion mild to moderately decreased, right rotation mild to moderately decreased.

(Tr. 312.)

Plaintiff was diagnosed with sprain lumbar region, lumbar disc displacement, lumbosacral neuritis nos, and sprain of neck. (*Id.*) The report indicates that Plaintiff brought the lumbar MRI report for review, which was taken on January 19, 2009. (Tr. 313.) The MRI findings included:

> [S]mall broad based L5/S1 central and right paracentral disc protrusion, which mildly indents the thecal sac, and impinges upon the right S1 nerve root; L4/5 mild circumferential disc bulge, and facet arthrosis with hypertrophy of the ligamentum flavum resulting in mild central canal and lateral recess stenosis; borderline minimal disc bulges at L2/3 and L3/4.[4]

(*Id.*)

### 3. James G. Henderson, M.D.

On May 14, 2011, Plaintiff was evaluated by State agency examiner Dr. Henderson. (Tr. 339.) Plaintiff wore Velcro knee braces during the examination and walked with a wide-based gait. (Tr. 340.) The examination revealed in

---

[4] The lumbar MRI results are also mentioned in Dr. Henderson's May 14, 2011 examination (*see* Tr. 339), and Dr. Krishnamurthy's August 5, 2011 Physical RFC Assessment (*see* Tr. 373). Dr. Krishnamurthy's RFC also refers to the cervical MRI results. (*See* Tr. 374.)

11

relevant part:

> Valgus deformity of the knees with crepitation. . . .
> A hint of scoliosis is noted in the lumbar region. There are paravertebral muscle spasms. Lumbar bend is 6 inches to the floor. Straight leg raise lying is 80 degrees bilaterally. Straight leg raise sitting is 90 degrees bilaterally.
> Callous formation on the dorsum of the right hand is appreciated. . . .
> Early Pes planus is appreciated. Jamar apparatus shows 85 pounds of grip strength in the right hand and 60 pounds of grip strength in the left hand. . . .
> There was mild difficulty with heel and toe walking.
> There was mild difficulty squatting and arising from the sitting position.

(Tr. 340-41.) As part of his conclusions, Dr. Henderson opined:

> The patient has a history of joint discomfort of the feet, knees, hands and lumbar region. There is limited lumbar range of motion and a hint of scoliosis noted in the lumbar region. There is pain in both knees. He shows valgus deformity and crepitation with slight decreased full extension. Bilateral knee braces were brought but not required to stabilize station or stabilize knee function. . . . MRIs have concluded the degenerative changes. Paraspinous muscle spasm was appreciated today. Early Pes planus was noted as well. He has some difficulty with orthopedic maneuvers. X-ray of the left knee is enclosed for review.

(Tr. 341.)

### 4. P.S. Krishnamurthy, M.D

On August 5, 2011, Dr. Krishnamurthy completed a Physical RFC Assessment. (Tr. 372-79.) Dr. Krishnamurthy opined that Plaintiff could lift and/or carry 50 pounds occasionally and 25 pounds frequently, stand and/or walk for six hours, and sit for six hours in an eight-hour workday. (Tr. 373.) Dr. Krishnamurthy further opined that Plaintiff could occasionally stoop, kneel,

12

crouch, crawl, and climb ladders/ropes/scaffolds, and frequently balance and climb ramps/stairs. (Tr. 374.) Dr. Krishnamurthy also opined that Plaintiff should avoid concentrated exposure to vibration and hazards. (Tr. 376.)

### C. The ALJ's Decision

The ALJ found Plaintiff had the RFC to perform less than a full range of medium work:

> Specifically, the claimant can lift and carry fifty pounds occasionally and twenty-five pounds frequently. In addition, the claimant is able to stand, walk and sit for six hours apiece in an eight-hour timeframe. Moreover, the claimant is able to engage in unlimited pushing and pulling and he can frequently climb ramps and stairs and engage in frequent balancing. Although the claimant must avoid concentrated exposure to vibration and unprotected heights, he is able to engage in occasional stooping, kneeling, crouching and crawling. In addition, the claimant is able to engage in occasional ladder, rope and scaffold climbing.

(Tr. 17.)

In making this finding, the ALJ gave "great probative weight" to Dr. Krishnamurthy's non-examining opinions because they were found to be "consistent with the weight of the objective evidence found in the medical record as a whole." (Tr. 20.) The ALJ gave "limited probative weight" to Dr. Gogan's treating opinions. (*Id.*) The ALJ stated:

> During the hearing, the claimant testified that he was laid off from his previous position and that he has a lawsuit pending against his former employer. It appears that the claimant was referred to Dr. Goggin [sic] by his attorney during the course of the litigation. Both factors present reasons other than disability to explain why the claimant is not working.

> A review of the medical record shows that Dr. Goggin [sic] has performed few, if any, examinations of the claimant and although the physician referred to magnetic resonance imaging in his report of the claimant's residual functional capacity there are no copies of the results of the images in the record. Moreover, it is noted that Dr. Goggin [sic] has treated the claimant on a conservative basis for a substantial period. One would reasonably expect at some time there would be referral to a specialist, possibly a neurosurgeon, at some point. As noted above, the record also shows that the claimant has maintained his commercial driver's license and admitted during the hearing that he has attempted to obtain work from thirty-five different companies during the period at issue in this decision. This is inconsistent with a claim of being disabled from working.
>
> Although the claimant maintains that he has been unable to be hired because of his back problems, his litigation doctor is the only medical provider advancing the notion that he has problems driving due to a back problem. In addition, the limitations imposed on the claimant by Dr. Goggin [sic] are so completely inconsistent with the weight of the objective data in this case and extremely limiting such that they border on the implausible (Ex. 12F).

(*Id.*)

After finding Plaintiff was capable of performing his past relevant work as a truck driver, the ALJ concluded that Plaintiff had not been under a disability from May 4, 2009 through November 9, 2012. (Tr. 20-21.)

### D. Analysis

The Court agrees with Plaintiff that the ALJ erred in her evaluation of the medical opinions of record. Although an ALJ may discount a treating physician's opinions if there is good cause to do so, in the present case, there was no good cause because the ALJ's reasons for giving Dr. Gogan's opinions limited probative weight are not supported by substantial evidence.

14

First, in rejecting Dr. Gogan's opinions, the ALJ stated that Dr. Gogan "has performed few, if any, examinations of the claimant." (Tr. 20.) This statement is contradicted by the record, which shows that Dr. Gogan saw Plaintiff at least twenty-six times since March of 2009 before completing a medical source statement on August 22, 2012. This is significant because the length of the treatment relationship and the frequency of examination directly affect the weight to be accorded to a treating source's opinions. *See* 20 C.F.R. § 404.1527(c).

The ALJ also stated that Plaintiff has been treated only conservatively and that no referral to a neurosurgeon has been made. This statement is also unsupported by the record, which shows that Plaintiff has tried numerous treatment options, including multiple pain medications, a muscle relaxant, epidural injections, massage therapy, physical therapy, chiropractic care, acupuncture, a TENS unit, home care remedies like hot baths and showers, and all along has been seeing an orthopedic surgeon—Dr. Gogan—who did not believe that Plaintiff would truly benefit from back surgery. (*See, e.g.*, Tr. 296-97, 308-09, 311, 345.) Specifically, Dr. Gogan stated that at best, surgery would reduce Plaintiff's pain by 50%, but he would still be on pain medication and would not be able to enter the workforce. (Tr. 296; *see also* Tr. 333 ("[H]e is looking at major fusion surgery but probably will not in the end cure him. . . . I think the results of surgery are probably pretty poor. Certainly it would not allow him to get back into the workforce.").)

The ALJ further stated that Plaintiff was referred to Dr. Gogan "by his attorney during the course of the litigation" pending against his former employer. (Tr. 20.) However, there is no evidence in the record that Plaintiff has ever filed a lawsuit against his former employer. (*See* Tr. 258.) The only litigation in which Plaintiff was involved relates to his two, non-work-related motor vehicle accidents, after which he asked for and received a referral from his attorney for a spinal doctor. (*See* Tr. 30, 35-36, 258, 260.) Dr. Gogan was one of the doctors recommended for treatment of Plaintiff's back and neck pain, and, as shown by the multiple treatment records, his role was to treat Plaintiff, rather than serve as an expert in any litigation. (*See* Tr. 30, 38-39, 260.) In addition, the absence of the MRI reports from Dr. Gogan's treatment records does not necessarily undermine his opinions given that the MRI results are cited by various doctors throughout the record (Tr. 313, 339, 373-74), and they were also included in the ALJ's decision (Tr. 19).

The ALJ also noted that Plaintiff's renewal of his commercial driver's license and attempt to obtain work during the period at issue, was inconsistent with a claim of disability. However, the fact that Plaintiff's attempt to obtain work was actually unsuccessful supports Plaintiff's position. As Plaintiff explained at the hearing, nobody would hire him because of his back problems, which he had to reveal on his applications for truck driving positions. (Tr. 40.)

The ALJ discounted Plaintiff's testimony that nobody would hire him

16

because of his back problems by stating that Dr. Gogan was the only medical provider advancing the notion that Plaintiff had problems driving due to a back problem.  (Tr. 20.)  The ALJ added that Dr. Gogan's limitations "are so completely inconsistent with the weight of the objective data in this case and extremely limiting such that they border on the implausible." (*Id.*)  However, the ALJ did not identify the objective data to which she was referring.  Further, the Court's independent review of the record reveals that Dr. Gogan's opinions are not necessarily inconsistent with the opinions of the other treating and examining sources.  For example, Dr. Ziemba's examination during initial consultation revealed multiple positive findings, including positive straight leg raising test, pain at the L5-S1 area, knee pain with flexion, and decreased (severely in some aspects) range of motion of the lumbar spine.  (Tr. 312.)  Further, Dr. Henderson's consultative examination revealed limited lumbar range of motion and a hint of scoliosis in the lumbar region, paraspinous muscle spasm, and some difficulty with orthopedic maneuvers, among other findings.  (Tr. 341.)

The ALJ interpreted Dr. Henderson's examination findings as consistent with Dr. Krishnamurthy's non-examining opinions and "with the record of treatment in this case." (Tr. 19.)  Although Dr. Henderson's findings did not reveal abnormalities in some respects, there were positive findings with respect to Plaintiff's back condition, among others.  Thus, it is unclear how Dr. Henderson's findings were consistent with Dr. Krishnamurthy's opinion that

17

Plaintiff could, for instance, lift and/or carry 50 pounds occasionally and 25 pounds frequently, and sit, stand, and/or walk for six hours in an eight-hour workday. (Tr. 373.)

Further, the record of treatment does not seem to support Dr. Krishnamurthy's opinion. The treatment records reveal that Plaintiff's pain medication needed to be adjusted or changed several times and that even with the medication and other treatment options, Plaintiff was still in a lot of pain, which was generally not as severe when he was not working. (*See, e.g.*, Tr. 297, 303 ("Less physical activity is helping. . . . The patient has to take the pain medication more or less round the clock."), 304, 305 ("Because [Plaintiff] is not working, the good news is that his musculoskeletal problems are still there but not as severe."), 307, 331, 333.) The records also reveal that Plaintiff never sits comfortably in a chair and that with prolonged sitting, he gets very sick. (Tr. 328, 337.) To the extent the records show that Plaintiff was doing well during certain follow-up visits, the same records indicate that Plaintiff remained out of work, which helped with his symptoms. (Tr. 305, 328.)

Based on the foregoing, the ALJ's decision to give limited probative weight to Dr. Gogan's opinions, while giving great probative weight to Dr. Krishnamurthy's opinions, is not supported by substantial evidence. Therefore, this case will be reversed and remanded with instructions to the ALJ to reconsider Dr. Gogan's opinions, explain what weight they are being accorded, and the

reasons therefor. In the event the ALJ decides to reject any portion of Dr. Gogan's opinions, the ALJ must provide good cause therefor. In light of this conclusion and the possible change in the RFC assessment, the Court finds it unnecessary to address Plaintiff's second argument regarding credibility. *See Jackson v. Bowen*, 801 F.2d 1291, 1294 n.2 (11th Cir. 1986) (per curiam); *Freese v. Astrue*, 2008 WL 1777722, at *3 (M.D. Fla. Apr. 18, 2008); *see also Demenech v. Sec'y of the Dep't of Health & Human Servs.*, 913 F.2d 882, 884 (11th Cir. 1990) (per curiam). However, on remand, the ALJ will be directed to re-consider Plaintiff's credibility.

Accordingly, it is **ORDERED**:

1. The Commissioner's decision is **REVERSED** pursuant to sentence four of 42 U.S.C. § 405(g) and **REMANDED** with instructions to the ALJ to: (a) reconsider Dr. Gogan's opinions, explain what weight they are being accorded, and the reasons therefor; (b) reconsider Plaintiff's credibility; (c) reconsider the RFC assessment, if necessary, and (d) conduct any further proceedings deemed appropriate.

2. The Clerk of Court is directed to enter judgment consistent with this Order and close the file.

3. Should this remand result in the award of benefits, pursuant to Rule 54(d)(2)(B) of the Federal Rules of Civil Procedure, Plaintiff's attorney is **GRANTED** an extension of time in which to file a petition for authorization of

attorney's fees under 42 U.S.C. § 406(b). Plaintiff's attorney shall file such a petition within **thirty (30) days** from the date of the Commissioner's letter sent to Plaintiff's counsel of record at the conclusion of the Agency's past due benefit calculation stating the amount withheld for attorney's fees. See In re: *Procedures for Apply for Attorney's Fees Under 42 U.S.C. §§ 406(b) & 1381(d)(2)*, Case No. 6:12-mc-124-Orl-22 (M.D. Fla. Nov. 13, 2012). This Order does not extend the time limits for filing a motion for attorney's fees under the Equal Access to Justice Act, 28 U.S.C. § 2412.

      **DONE AND ORDERED** at Jacksonville, Florida, on May 6, 2015.

                                                MONTE C. RICHARDSON
                                        UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record